# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BRUCE LIVINGSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13 C 2166 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| TRUSTGARD INSURANCE, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Bruce Livingston has an underinsured motorist insurance policy with defendant Trustgard Insurance Company. The policy includes an exhaustion clause, which provides that Trustgard will pay Mr. Livingston only after he exhausts "any" other applicable insurance policies. Mr. Livingston has filed this action against Trustgard, contending that the exhaustion clause has been satisfied because he has exhausted one of the two applicable insurance policies. Trustgard has moved for judgment on the pleadings, contending that Mr. Livingston must exhaust both applicable polices before it is required to pay Mr. Livingston. For the following reasons, Trustgard's motion is granted.

## I. FACTS

According to the complaint, Mr. Livingston was involved in a car accident on January 19, 2009, suffering injuries to his cervical spine and shoulder. The driver of the other car, Brian Shafar, had a personal automobile liability insurance policy with Hartford Insurance. Mr. Livingston is prosecuting a personal injury action against Mr. Shafar in state court. The vehicle that Mr. Shafar was driving was separately insured by Encompass Insurance Company. Encompass has already settled with and paid Mr. Livingston. Mr. Livingston and Trustgard

agree that he has thus exhausted the Encompass policy, but has not yet exhausted the Hartford policy.

Mr. Livingston himself carries underinsured motorist insurance with Trustgard. Plaintiff has demanded coverage from Trustgard, but Trustgard has refused to pay Mr. Livingston, because he has not exhausted all applicable insurance policies. The Trustgard insurance policy states:

> We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgment or settlements.

(Compl. Ex. B at C-4, Dkt. No. 1-2.) Trustgard contends that Mr. Livingston has not satisfied this requirement because he has exhausted one, but not both, of the applicable policies.

Mr. Livingston filed a complaint alleging three counts: (i) a count seeking a declaratory judgment that Trustgard wrongfully denied Mr. Livingston coverage; (ii) breach of contract; and (iii) consumer fraud. The complaint also includes class action allegations on behalf of similarly situated individuals.

Trustgard has moved for judgment on the pleadings, arguing that, in the context of the exhaustion clause, "any" unambiguously means "every" or "all."

## II. STANDARD OF REVIEW

In evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the court employs the "same standard that applies when reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Buchanan–Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, the court must view the facts alleged in the complaint "in the light most favorable to the nonmoving party and will grant the motion only if it appears beyond doubt that the plaintiff cannot prove any facts that would support her claim for

relief." *Id.* (internal citation and quotation omitted). The court should not ignore facts in the complaint that "undermine the plaintiff's claim" nor "give weight to unsupported conclusions of law." *Id.* Moreover, although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted)).

### III. ANALYSIS

**A. Count I (Declaratory Judgment) and Count II (Breach of Contract)**

Mr. Livingston's declaratory judgment and breach of contract claims both turn on the interpretation of the word "any" in the exhaustion clause of the insurance policy. Under Illinois law, interpretation of an insurance policy is a question of law. *Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co.*, 452 F. Supp. 2d 857, 869 (N.D. Ill. 2006) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)). The policy is construed as a whole, with due regard to the risk undertaken, the subject matter that is insured, and the purposes of the entire contract. *Outboard Marine,* 607 N.E.2d at 1212. The purpose of underinsured motorist coverage is "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 653 (Ill. 2011) (internal quotation omitted). The coverage "cover[s] the shortfall between the amount of insurance contracted for and the amount received from the liable driver." *Cummins v. Country Mut. Ins. Co.*, 687 N.E.2d 1021, 1023 (Ill. 1997).

If the words of a policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. *Outboard Marine*, 607 N.E.2d at 1212. If, however, the words

are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy. *Id.* This rule of construction in favor of coverage comes into play only when the term at issue is ambiguous. *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005) (citing *Menke v. Country Mut. Ins. Co.*, 401 N.E.2d 539, 541 (Ill. 1980)). A contract is not ambiguous merely because the parties disagree on its meaning. *Cent. Ill. Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 214 (Ill. 2004) (citing *Johnstowne Centre P'ship v. Chin*, 458 N.E.2d 480, 481 (Ill. 1983)). However, a contract is not necessarily unambiguous when each party insists that the language unambiguously supports its position. *Id.* Rather, whether a contract is ambiguous is a question of law. *Id.* (citing *Quake Constr., Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 994 (Ill. 1990)).

Trustgard contends that, in the context of the exhaustion clause, "any" unambiguously means "every" or "all," for several reasons. First, the Supreme Court of Illinois has held that an exhaustion clause identical to Trustgard's was "virtually identical" to language contained in the Illinois statute expressly authorizing clauses in underinsured motorist insurance policies. *See Gen. Cas. Ins. Co. v. Lacey*, 769 N.E.2d 18, 21 (Ill. 2002). That statute provides that such policies may include clauses which deny payment until "all" applicable policies have been exhausted. 215 Ill. Comp. Stat. 5/143a-2(7). Therefore, Trustgard contends, in the context of an exhaustion clause, the word "any" is synonymous with "all." Trustgard cites authorities from other jurisdictions that it claims support its interpretation as well. *See Augustine v. Simonson*, 940 P.2d 116, 119 (Mont. 1997); *Bergen v. Motorists Mut. Ins. Co.*, No. CA2000-06-112, 2001 WL 567841, at *5 (Ohio Ct. App. May 29, 2001).

Trustgard also points to various dictionaries and grammar usage authorities that it claims support its view. Specifically, Trustgard argues that "any" must mean "all" because (i) "any"

4

modifies the plural nouns "liability bonds or policies," as opposed to the singular form of those nouns; (ii) the quantity of applicable policies is unknown, so the use of the word "any" should not be construed as limiting; and (iii) the clause is an affirmative sentence, and in such sentences, "any" means "all."

Mr. Livingston contends that the more common use of the word "any" is to mean "one." He points to Black's Law Dictionary, which defines "any" as "some out of many, an indefinite number . . . may be employed to indicate 'all' or 'every' as well as 'some' or 'one' . . . ." Black's Law Dictionary 94 (6th Ed. 1990). He argues that, at most, the exhaustion clause is ambiguous and that any ambiguity should be resolved in his favor. He also claims that the fact that Trustgard's policy uses the word "any," while the Illinois authorizing statute uses the word "all," reveals an intent on Trustgard's part to "bait-and-switch" consumers into believing that they were signing up for a more attractive policy than they actually received. He claims that further discovery is necessary to determine Trustgard's intent.

Although the word "any" is indeed sometimes used to mean "one," the court finds that, in this context, that construction is strained. Like many states, Illinois requires automobile insurers to include underinsured motorist coverage in policies they issue. *See* 215 Ill. Comp. Stat. 5/143a-2(4). The statute limits the amount of liability for an insurer providing underinsured motorist coverage to the amount of underinsured coverage provided in the insurance policy "less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured vehicle." *Id.* The statute goes on to expressly authorize exhaustion clauses:

> A policy which provides underinsured motor vehicle coverage may include a clause which denies payment until the limits of liability or portion thereof under *all* bodily injury liability insurance policies applicable to the underinsured motor

5

vehicle and its operators have been partially or fully exhausted by payment or judgment of settlement.

215 Ill. Comp. Stat. 5/143a-2(7) (emphasis added).

The Illinois statute authorizing exhaustion clauses thus contemplates that an insurer's obligation to pay underinsured motorist coverage is not triggered until all applicable polices have been exhausted. This is consistent with the purpose of underinsured motorist coverage—to cover any shortfall between the amount of insurance contracted for and the amount received from the liable driver—while avoiding the inefficiencies that would accompany an insurer making payment before the amount of any such shortfall is determined. Although nothing prevents two parties from contracting for such an outcome, the court will not assume that by merely replacing the word "all" with "any," the parties intended to deviate so far from the process contemplated by statute. Indeed, in *Lacey*, the Supreme Court of Illinois noted that the language contained in Trustgard's policy was "virtually identical" to the statutory language. 769 N.E.2d at 21 (Ill. 2002).

Looking to the contract as a whole, it too supports the view that "any" in this context means "all." For example, a different section of the same policy, titled "Limit of Liability," provides, "The limit of liability for this coverage shall be reduced by all sums . . . paid or payable because of the bodily injury under any automobile medical payments coverage." (Compl. Ex. B at C-6, Dkt. No. 1-2.) Here, again, the parties use "any" and "all" interchangeably to mean "every." Furthermore, Mr. Livingston's argument that if the parties intended "any" to mean "all," they would have used the phrases "any and all" or "each and every," is belied by the fact that those phrases are not used anywhere in the policy.

Finally, to the extent that dictionaries and usage guides shed light on this question, they also generally agree that, in this context, "any" more often means "all." Mr. Livingston asserts

6

that it is uncommon for the word "any" to be used in the plural, but he does not cite any authority to support this assertion. According to at least one usage guide, it is actually the singular use that is "fairly rare." Bryan A. Garner, *Garner's Modern American Usage* 52 (3d ed. 2009). According to that usage guide, when "any" is used in the singular, it "is elliptical for *any one*; the sentence often reads better if *one* is retained." *Id.* at 53. But replacing "any" with "any one" in the exhaustion clause at issue here renders it ungrammatical: "We will pay under this coverage only after the limits of liability under *any one* applicable liability *bonds or policies have been* exhausted . . . ." The problem is that the nouns "liability bonds" and "policies" are plural, thus contemplating the need to exhaust multiple policies.

All of this is consistent with Trustgard's view that "any" in this context unambiguously means "every" or "all." Even the authority cited by Mr. Livingston notes that the meaning of "any" when used in a statute "depends upon the context and the subject matter of the statute." Black's Law Dictionary 94 (6th Ed. 1990). Here, that context, including the history and purpose of underinsured motorist coverage, the insurance policy as a whole, and the usage of the word "any" in the exhaustion clause at issue, all favor Trustgard's construction. Since the court finds that the language of the policy is clear and unambiguous, legal doctrines mandating that ambiguity in an insurance contract be resolved against the insurance company and in favor of the insured are inapplicable. *See Va. Surety Co. v. Northern Ins. Co. of N.Y.,* 886 N.E.2d 149, 153 (Ill. 2007).

Mr. Livingston does not dispute that he has not exhausted one of the two applicable policies. Accordingly, he cannot prevail on his declaratory judgment or breach of contract claims, both of which are premised on the mistaken view that Trustgard wrongfully denied him coverage. Counts I and II are therefore dismissed.

### B. Count III (Consumer Fraud)

Mr. Livingston's consumer fraud claim, however, does not turn on the interpretation question. To bring a claim under the Consumer Fraud Act, a plaintiff must allege the following: (i) a deceptive act or practice by defendant; (ii) an intent by defendant that plaintiffs rely on the deception; and (iii) that the deception occurred in a course of conduct involving trade or commerce. *Siegel v. Levy Org. Dev. Co.*, 607 N.E.2d 194, 198 (Ill. 1992). Plaintiffs must also plead their claim with particularity. *Gallagher Corp. v. Mass. Mut. Life Ins. Co.*, 940 F. Supp. 176, 180 (N.D. Ill. 1996) (citing Illinois cases requiring that Consumer Fraud Act claims be pled with particularity). Specifically, plaintiffs must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

Here, the complaint merely alleges, in conclusory fashion, that Trustgard intentionally schemed to defraud Mr. Livingston by misstating the coverage under the insurance policy. Mr. Livingston does not identify the name of the person who made any misrepresentation, let alone the time, place, and content of the misrepresentation, or the method by which the misrepresentation was communicated. Absent any particularized allegations, the complaint fails to state a consumer fraud claim. Accordingly, Trustgard is entitled to judgment on the pleadings with respect to that claim as well.

### IV. CONCLUSION

For the reasons set forth above, Trustgard's motion for judgment on the pleadings is granted. The clerk is directed to enter judgment in favor of defendant and to close this case.

ENTER:

DATED: October 25, 2013

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge